[Cite as *Hineline v. Ohio Dept. of Transp., Dist. 8*, 2011-Ohio-1949.]

# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

DAVID HINELINE

     Plaintiff

     v.

OHIO DEPARTMENT OF TRANSPORTATION, DISTRICT 8

     Defendant

     Case No. 2010-09418-AD

Deputy Clerk Daniel R. Borchert

MEMORANDUM DECISION

{¶ 1}   Plaintiff, David Hineline, filed this action against defendant, Department of Transportation (ODOT), contending ODOT should bear liability for additional expenses he incurred when he missed a scheduled airplane flight as a result of Interstate 75 North being closed to traffic on the morning of June 25, 2010 due to roadway construction in Warren County.  Plaintiff related, "I had a flight from Dayton, Ohio to Reno Nevada leaving the morning of June 25 at 6:09 a.m. (and) I live in the Liberty township area of Cincinnati."  Plaintiff recalled he left his residence during the early morning hours of June 25, 2010 and began driving on Interstate 75 North towards the Dayton airport. Plaintiff further recalled as he was traveling on Interstate 75 North about "one mile before highway 73 exit" at approximately 4:25 a.m. he and other roadway traffic were forced to come to a complete stop as "[a]ll lanes on 75 were closed and all exits were closed."  Plaintiff noted traffic remained stopped on the roadway until approximately 5:35 a.m. on June 25, 2010.  In his complaint, plaintiff pointed out the lane closures on Interstate 75 "was all because of highway construction" and no warning or advisory signs were posted to notify motorists of the lane closures.  Furthermore, plaintiff maintained no traffic control was in place to direct motorists to an alternative Route to

bypass the closed roadway. Plaintiff explained he arrived at the Dayton Airport too late to make his 6:09 a.m. flight to Reno and all later flights to that city were "sold out." Plaintiff further explained he then purchased a ticket to fly to Sacramento, California and then rented a car to drive to his intended destination, Reno, Nevada. In his complaint, plaintiff submitted documentation showing he purchased a ticket on June 25, 2010 for a flight from Dayton to Sacramento in the amount of $419.40. Additionally, plaintiff submitted documentation showing he rented a car at the Sacramento Airport at 10:59 p.m. on June 25, 2010 in the amount of $154.89. Plaintiff stated, "I had to spend an additional $574.29 on an already expensive trip because I was sitting on an interstate that was completely closed due to construction." Submitted documentation shows plaintiff left Dayton at approximately 4:05 p.m. (EDT) on June 25, 2010 and arrived in Sacramento at approximately 10:48 p.m. (PDT) on June 25, 2010. Plaintiff argued ODOT should bear responsibility for additional expenses he incurred to arrive at his intended destination of Reno due to the fact he missed his original flight because of roadway closure on Interstate 75 in a construction project zone. The filing fee was paid.

{¶ 2} Defendant acknowledged the particular area of Interstate 75 North that plaintiff addressed in his complaint was located within a working construction project under the control of ODOT contractor, The John R. Jurgensen Company (Jurgensen). Defendant also acknowledged specific sections of Interstate 75 North were subject to lane closures from 9:00 p.m. on June 24, 2010 to 6:00 a.m. on June 25, 2010. Defendant related, "[t]he on-ramp from SR 73 to I-75 northbound was closed at 9 p.m. on June 24, 2010, for placement of concrete for the new ramp." Defendant also related, "I-75 northbound just north of SR 73" had lane closures, however, "[t]he off ramp from I-75 northbound to SR 73 was NOT closed and was open to traffic." Defendant submitted a letter from Jurgensen Safety Manager, Travis Roberts, who offered a written explanation regarding lane closures on Interstate 75 North on the morning of June 25, 2010. Roberts wrote Jurgensen "[s]ub contractor Shelley and Sands had to close the only open lane on I-75 North Bound at the Pennyroyal Bridge for twenty(20) minutes at 5:00 a.m. to secure a steel beam. Roberts advised that the decision to have all lanes closed during this operation was "to ensure that neither the motoring public nor the construction crew would be put in an unsafe situation." Roberts maintained that Jurgensen sub contractor "Shelley and Sands were within the scope of their contract

and adhered to specifications when they temporarily closed I-75 North Bound for twenty (20) minutes." Roberts reported the public was notified of the lane closures "via media advisories."

{¶ 3} Defendant argued that Jurgensen, by contractual agreement, was responsible for maintaining the roadway within the construction zone. Therefore, ODOT contended that Jurgensen is the proper party defendant in this action. Defendant implied that all duties, such as the duty to inspect, the duty to warn, the duty to maintain, and the duty to repair defects were delegated when an independent contractor takes control over a particular section of roadway. Furthermore, defendant contended that plaintiff failed to introduce sufficient evidence to prove that his damage was proximately caused by any breach of a duty of care owed to the motoring public by either ODOT or its contractors. All construction work, including traffic control, was to be performed in accordance with ODOT requirements and specifications and subject to ODOT approval. Also evidence has been submitted to establish that ODOT personnel were present on site conducting inspection activities.

{¶ 4} For plaintiff to prevail on a claim of negligence, he must prove, by a preponderance of the evidence, that defendant owed him a duty, and that the breach proximately caused his injuries. *Armstrong v. Best Buy Company, Inc.,* 99 Ohio St. 3d 79, 2003-Ohio-2573,¶8 citing *Menifee v. Ohio Welding Products, Inc.* (1984), 15 Ohio St. 3d 75, 77, 15 OBR 179, 472 N.E. 2d 707. Plaintiff has the burden of proving, by a preponderance of the evidence, that he suffered a loss and that this loss was proximately caused by defendant's negligence. *Barnum v. Ohio State University* (1977), 76-0368-AD. However, "[i]t is the duty of a party on whom the burden of proof rests to produce evidence which furnishes a reasonable basis for sustaining his claim. If the evidence so produced furnishes only a basis for a choice among different possibilities as to any issue in the case, he fails to sustain such burden." Paragraph three of the syllabus in *Steven v. Indus. Comm.* (1945), 145 Ohio St. 198, 30 O.O. 415, 61 N.E. 2d 198, approved and followed. This court, as trier of fact, determines questions of proximate causation. *Shinaver v. Szymanski* (1984), 14 Ohio St. 3d 51, 14 OBR 446, 471 N.E. 2d 477.

{¶ 5} Defendant had the duty to maintain its highways in a reasonably safe condition for the motoring public. *Knickel v. Ohio Department of Transportation* (1976),

49 Ohio App. 2d 335, 3 O.O. 3d 413, 361 N.E. 2d 486. However, defendant is not an insurer of the safety of its highways. See *Kniskern v. Township of Somerford* (1996), 112 Ohio App. 3d 189, 678 N.E. 2d 273; *Rhodus v. Ohio Dept. of Transp.* (1990), 67 Ohio App. 3d 723, 588 N.E. 2d 864. The duty of ODOT to maintain the roadway in a safe drivable condition is not delegable to an independent contractor involved in roadway construction. ODOT may bear liability for the negligent acts of an independent contractor charged with roadway construction. *Cowell v. Ohio Department of Transportation*, Ct. of Cl. No. 2003-09343-AD, jud, 2004-Ohio-151. Despite defendant's contentions that ODOT did not owe any duty in regard to the construction project, defendant was charged with duties to inspect the construction site and correct any known deficiencies in connection with the particular construction work. See *Roadway Express, Inc. v. Ohio Dept. of Transp.* (June 28, 2001), Franklin App. 00AP-1119.

{¶ 6} Defendant supplied a written correspondence from ODOT Project Supervisor, Margaret (Peg) Cowell, regarding her recollection of the lane closure situation on Interstate 75 North. The relevant portions of this document are reproduced as follows:

{¶ 7} "On the morning of June 25, 2010 ODOT Project 171-09 had the following closures: I-75 Northbound just north of SR-73, and the ON ramp to I-75 Northbound from SR-73. One lane of I-75 Northbound just north of SR-73 was closed at 7 pm on June 24, 2010 and two lanes were closed at 10 pm that evening for the steel beams to be removed from the Pennyroyal bridge overpass. The ON ramp from SR-73 to I-75 northbound was closed at 9 pm on June 24, 2010 for placement of concrete for the new ramp. These closures were called in for the media advisory and all lanes of traffic were opened at the scheduled time (5:30 am for the ON ramp from SR-73, and 6 am for all northbound I-75 lanes). The OFF ramp from I-75 northbound to SR-73 was NOT closed, and was open to traffic the entire evening.

{¶ 8} "At approximately 5 am an incident occurred at the Pennyroyal bridge overpass that resulted in the only open lane of I-75 northbound to be closed for 20 minutes. A steel beam was being lifted off of the overpass and it shifted in the "choke hold" causing it to sway above traffic. The contractor had to close the last open lane of I-75 northbound in order to set the beam down and secure it better so it did not cause any problems directly over traffic. This closure was done for safety reasons so that the

unstable beam did not hit a vehicle driving underneath it, or cause any vehicle to crash.

**{¶ 9}** "The ODOT inspector was with the concrete pour operation on the SR-73 ON ramp during this incident. I came to work on the evening of June 24, 2010 to check all of the closures, and they were all in accordance with the maintenance of traffic plans for this project and with the Ohio Manuel of Uniform Traffic Control Devices."

**{¶ 10}** "If any injury is the natural and probable consequence of a negligent act and it is such as should have been foreseen in the light of all the attending circumstances, the injury is then the proximate result of the negligence. It is not necessary that the defendant should have anticipated the particular injury. It is sufficient that his act is likely to result in an injury to someone." *Cascone v. Herb Kay Co.* (1983), 6 Ohio St. 3d 155, 160, 6 OBR 209, 451 N.E. 2d 815, quoting *Neff Lumber Co. v. First National Bank of St. Clairsville, Admr.* (1930), 122 Ohio St. 302, 309, 171 N.E. 327. Evidence available tends to point out the roadway was maintained properly under ODOT specifications. Plaintiff failed to prove his damage was proximately caused by any breach of a duty of care owed to him on either the part of ODOT or its agents. See *Wachs v. Dept. of Transp., Dist. 12*, Ct. of Cl. No. 2005-09481-AD, 2006-Ohio-7162; *Vanderson v. Ohio Dept. of Transp.*, Ct. of Cl. No. 2005-09961-AD, 2006-Ohio-7163; *Shiffler v. Ohio Dept. of Transp.*, Ct. of Cl. No. 2007-07183-AD, 2008-Ohio-1600.

# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

DAVID HINELINE

Plaintiff

v.

OHIO DEPARTMENT OF TRANSPORTATION, DISTRICT 8

Defendant

Case No. 2010-09418-AD

Deputy Clerk Daniel R. Borchert

<u>ENTRY OF ADMINISTRATIVE DETERMINATION</u>

Having considered all the evidence in the claim file and, for the reasons set forth in the memorandum decision filed concurrently herewith, judgment is rendered in favor of defendant. Court costs are assessed against plaintiff.

_____
DANIEL R. BORCHERT
Deputy Clerk

Entry cc:

David Hineline
5639 Selu Drive
Hamilton, Ohio 45011

Jolene M. Molitoris, Director
Department of Transportation
1980 West Broad Street
Columbus, Ohio 43223

RDK/laa
1/5
Filed 1/28/111
Sent to S.C. reporter 4/15/11